# Case No. 14,247.

## In re TURNER.

[1 Abb. U. S. 84; [1] Chase. 157; 6 Int. Rev. Rec. 147; 1 Am. Law T. Rep. U. S. Cts. 7.]

Circuit Court, D. Maryland. Oct. 13, 1867.

CONSTITUTIONAL LAW — CIVIL RIGHTS BILL — APPRENTICESHIP — NEGRO.

1. An indenture purporting to bind a child of negro descent apprentice, which does not contain important provisions for the security and benefit of the apprentice, which are required by the general laws of the state in indentures of white apprentices, is void, under section 1 of the civil rights bill of 1866 [14 Stat. 27].

[Cited in Slaughter House Cases, 16 Wall. (83 U. S.) 69.]

2. The civil rights bill of 1866 is constitutional, and applies to all conditions prohibited by it, whether originating in transactions before or since its enactment.

3. Colored persons, equally with white persons, are citizens of the United States. So held, of one who was formerly held as a slave, and was emancipated in the general abolition of slavery throughout the state, accomplished by a new state constitution.

Hearing upon a writ of habeas corpus. The petition in this case was preferred in behalf of Elizabeth Turner, by her next friend, Charles Henry Minoky. It alleged that Elizabeth Turner was the daughter of Elizabeth Minoky, formerly Elizabeth Turner; and that she was restrained of her liberty, and held in custody by Philemon T. Hambleton, of Saint Michael's, Talbot county, Maryland, in violation of the constitu-

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

tion and laws of the United States. The petition further showed that this restraint was claimed and exercised by virtue of certain alleged indentures of apprenticeship; but alleged that these indentures were not made in accordance with the laws of the state of Maryland, as applicable to the binding of white children; and, in particular, that at the time of making the alleged indentures of apprenticeship the mother of the petitioner was able, ready, and willing to support her; that the petitioner was not summoned to appear before the orphans' court of Talbot county on the day of making the said alleged indentures of apprenticeship: and that Hambleton, as master, was not bound by the alleged indentures of apprenticeship to give the petitioner any education, in reading, writing, and arithmetic; all of which requirements are made necessary by the laws of the state of Maryland in the case of the binding of white children. [The petition was filed September 20, and endorsed "Writ granted as prayed, returnable October 15, 1867." Signed. S. P. Chase, Chief Justice of the United States.] [2]

The respondent, P. T. Hambleton, made the following return to the writ: "In obedience to the command of the within writ, I herewith produce the body of Elizabeth Turner, together with a copy of the indenture of apprenticeship, showing the cause of her capture and detention, and respectfully await the action of your honor." The indentures of apprenticeship filed by the respondent, provided that Elizabeth Turner shall be taught the art or calling of a house servant; and that the master shall provide said apprentice with food, clothing, lodging, and other necessaries, and shall pay to Betsey Turner, her mother, ten dollars at the end of her sixteenth year, twelve dollars and fifty cents at another period, and fifteen dollars to the girl at the end of her term of service, on the 18th of October, 1874, she having been born October 18, 1856. They recited that the child was apprenticed "by the consent of her mother, present in court," on November 3, 1864. They provided that in the event of the death of her mother the wages should be paid to the child. It further appeared, on the argument, that the child and her mother were formerly held as his slaves by the respondent. They were emancipated by the new constitution of the state, which took effect November 1, 1864.

[Slavery had existed by the common law of Maryland since its first settlement, and under its later state constitutions, the general assembly had been prohibited from passing laws interfering with it. So the laws and institutions of that state continued until 1864, when a convention was held to frame a new constitution, which was done. A clause in the new instrument abolished slavery in Maryland, and prohibited its fu-

ture existence or introduction. This constitution was submitted to the people for ratification by popular vote, which being had, it appeared that a majority of the votes cast at the regular voting places was against the adoption of it, but by counting certain votes returned as cast in their camps, some of which were not in Maryland, by certain Maryland troops then engaged in the armies of the United States in the Civil War a majority of votes appeared to have been in favor of the ratification of it. The constitution was thereupon declared by proclamation of the then governor to have been adopted, and was put in operation.] [3]

The child was bound apprentice to the respondent, November 3, 1864, two days after she became free; and the indentures were made in pursuance of a general law of the state regulating the apprenticing of children previously held as slaves, and differing in many provisions from the law governing the apprenticing of white children.

Mr. Stockbridge and Nathan M. Pusey, for petitioner.

[4] [The law of congress, called the "Civil Rights Bill," was passed since the child was indentured (April 9, 1866), and everybody told him that the law did not interfere with this case.

[Mr. Stockbridge, for the petitioner, said the return made to the writ does not traverse any of the allegations of the petition. It was manifest upon the face of the paper that the allegations were true, and that the law of the state has not been complied with. The petition and return disposes of the whole case.

[The Chief Justice: State the points upon which you claim a discharge.

[Mr. Stockbridge then read the law relating to white apprentices, to show that its various provisions had not been complied with in the indentures in this case. Under the law of congress, he said, there can be no distinction between blacks and whites, and therefore the law relating to white apprentices only is applicable. The chief justice said he desired that the whole case should be fully discussed, and would prefer that the respondent should be represented by counsel. The questions in the case, said the chief justice, are: Is this indenture in conformity with the general law of the state? Is said general law consistent with the act of congress to protect the colored people in their civil rights? Does said act of congress apply to this case? Was the passage of said act a constitutional exercise of the power of congress? The court inquired of the respondent if he desired to retain the girl, and, if so, if he had not better procure counsel?

[The respondent said he wished to retain the girl, but he did not feel sufficient inter-

---

est in the case to spend any money on it. He was satisfied to leave the case with the court. The counsel for petitioner then proceeded to argue the questions in the case. Mr. Stockbridge said the sort of apprenticeship adopted in Maryland was an evasion of the constitutional amendment abolishing slavery and involuntary servitude, and the constitution by its own powers executes itself. The civil rights bill was passed to remedy existing wrongs, and was designed to extinguish all existing institutions, and divers existing rights to hold persons to slavery in any form. Although the indentures were made in 1864, and the law was passed in 1866, it was retroactive to that extent that it would reach this case. It was not a law impairing the obligation of contracts, although there is no prohibition upon the power of congress to pass such a law. Congress is itself the judge of its power to pass such a law, and is alone the judge of the existing necessity for it. The decision of this case would affect the condition of thousands of colored minors whose term of slavery had been protracted from five to ten years by this illegal mode of apprenticing them. He quoted Chief Justice Marshall, in McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316, on the powers of congress, and other authorities, and discussed other points of the case.] [4]

The respondent appeared on the hearing, in person, and stated that he desired simply to submit the case to the judgment of the court. The chief justice said that the questions in the case were so grave and important that he should prefer to be advised by the argument of counsel on the part of the claimant. He would adjourn the court until next day at nine o'clock, in order to give the claimant or any person interested in the decision of the case an opportunity to appear. If no person appeared he would then dispose of the case. The child was retained in the custody of the court until the next day, when the following opinion was filed:

CHASE, Circuit Justice. The petitioner in this case seeks relief from restraint and detention by Philemon T. Hambleton, of Talbot county, in Maryland, in alleged contravention of the constitution and laws of the United States. The facts, as they appear from the return made by Mr. Hambleton to the writ, and by his verbal statement made in court, and admitted as part of the return, are substantially as follows:

The petitioner, Elizabeth Turner, a young person of color, and her mother, were, prior to the adoption of the Maryland constitution of 1864, slaves of the respondent. That constitution went into operation on November 1, 1864, and prohibited slavery. Almost immediately thereafter many of the freed people of Talbot county were collected together under some local authority, the nature of which does not clearly appear, and the younger persons were bound as apprentices, usually, if not always, to their late masters. Among others, Elizabeth, the petitioner, was indentured to Hambleton by an indenture dated November 3, two days after the new constitution went into operation.

Upon comparing the terms of this indenture (which is claimed to have been executed under the laws of Maryland relating to negro apprentices) with those required by the law of Maryland in the indentures for the apprenticeship of white persons, the variance is manifest. The petitioner, under this indenture, is not entitled to any education; a white apprentice must be taught reading, writing, and arithmetic. The petitioner is liable to be assigned and transferred at the will of the master to any person in the same county; the white apprentice is not so liable. The authority of the master over the petitioner is described in the law as a "property and interest;" no such description is applied to authority over a white apprentice. It is unnecessary to mention other particulars.

Such is the case. I regret that I have been obliged to consider it without the benefit of any argument in support of the claim of the respondent to the writ. But I have considered it with care, and an earnest desire to reach right conclusions. For the present, I shall restrict myself to a brief statement of these conclusions, without going into the grounds of them. The time does not allow more. The following propositions, then, seem to me to be sound law, and they decide the case:

1. The first clause of the thirteenth amendment to the constitution of the United States interdicts slavery and involuntary servitude, except as a punishment for crime, and establishes freedom as the constitutional right of all persons in the United States.

2. The alleged apprenticeship in the present case is involuntary servitude, within the meaning of these words in the amendment.

3. If this were otherwise, the indenture set forth in the return does not contain important provisions for the security and benefit of the apprentice which are required by the laws of Maryland in indenture of white apprentices, and is, therefore, in contravention of that clause of the first section of the civil rights law enacted by congress on April 9, 1866, which assures to all citizens without regard to race or color, "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

4. This law having been enacted under the second clause of the thirteenth amendment, in enforcement of the first clause of the same amendment, is constitutional, and applies to all conditions prohibited by it, whether originating in transactions before or since its enactment.

5. Colored persons equally with white persons are citizens of the United States.

The petitioner, therefore, must be discharged from restraint by the respondent.

The chief justice passed the following order: Ordered by the court, this 10th day of October, A. D. 1867, that Elizabeth Turner be discharged from the custody of Philemon T. Hambleton, upon the ground that the detention and restraint complained of is in violation of the constitution and laws of the United States; and it is further ordered that the costs of this proceeding be paid by the petitioner.